## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ELIJAH SCOTT | : | |
| v. | : | NO. 23-CV-219 |
| SUPERINTENDENT GINA CLARK, et al. | : | |

## REPORT AND RECOMMENDATION

SCOTT W. REID                                          DATE: September 8, 2025[1]
UNITED STATES MAGISTRATE JUDGE

This is a *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2254 by Elijah Scott, who is currently incarcerated at SCI Chester, in Chester, Pennsylvania. For the reasons that follow, I recommend that the petition be denied with prejudice.

I.     *Factual and Procedural Background*

Following his second jury trial in the Court of Common Pleas for Philadelphia County, Scott was convicted on July 1, 2016, of attempted murder and related offenses. *Petition* at ¶¶1(a), 2(a), 5. On September 15, 2016, he was sentenced to 10-20 years' incarceration. *Id*. at ¶¶2(b) and 3.

Scott's conviction arises out of the April 8, 2011, shooting of an individual identified by the Commonwealth as FJ.[2] *Commonwealth v. Scott*, 1885 EDA 2021, 290 A.3d 677 (Table), 2022 WL 17592200 (Pa. Super. Dec. 13, 2022) at *1. FJ spent two months in the hospital recovering from numerous gunshot wounds, and suffered permanent injuries. *Id*.

---

[1] This Report and Recommendation was originally filed on March 25, 2024, but not docketed. It is now re-filed.
[2] Because FJ was placed into the District Attorney's Office's witness relocation program, the Commonwealth refers to him by these initials instead of by his full name, and he will be called FJ herein.

During his hospitalization, FJ told his father, referred to here as FS, that he was shot by a man known as "Feek," and described Feek's facial tattoos. *Id*. FS then arranged for FJ to make a statement to Philadelphia Police Detective Vincent Parker, who came to the hospital. *Id*. On April 19, 2011, FJ gave a statement to Detective Parker, and identified a photograph of Scott as "Feek." *Id*. at *2. He told Detective Parker that Scott shot him because they had a fight a few days earlier about a cellphone which was stolen from Keisha, a bartender at a tavern they frequented. *Id*.

At an August 9, 2011, preliminary hearing, FJ testified that Scott got out of a black Cadillac and asked him whether he "wanted to go on a robbery." *Id*. When FJ said he did not, Scott shot him in the stomach and chest. *Id*.

At Scott's first trial, however, in October, 2014, FJ did not identify him. *Id*. Instead, while he repeated that he was shot by an individual who had just emerged from a car, he stated that he could not identify his shooter in the courtroom. *Id*. When cross-examined with his statement to Detective Parker, FJ said that he did not remember giving it, and that the signatures on it were not his. *Id*. He stated that Scott was not the man who shot him, and that there was no dispute between him and Scott. *Id*. The jury was unable to reach a verdict, and the judge declared a mistrial. *Id*.

Scott was tried again between June 29 and July 1, 2016. FJ did not show up for the first day of trial, and when he testified on the second day, he said that Scott was not the person who shot him. *Id*. The prosecution, however, contradicted FJ's recantation with evidence from both Detective Parker and FJ's father, FS. *Id*. FS testified that FJ called him before the first day of trial and told him he was scared to testify. *Id*. FS also identified the signatures on the statement to Detective Parker as being in his son's handwriting. *Id*.

2

In his defense, Scott presented his mother, Stephanie Sharper, and a friend named Jamal Hairston, who both testified that Scott was sleeping at his mother's house at the time FJ was shot. *Id*. at *3. Scott also obtained Detective Parker's admission on cross-examination that investigation failed to uncover evidence of the Cadillac FJ described, or the weapon which shot him. *Id*. Nevertheless, as above, the second jury convicted Scott.

After he was sentenced, Scott filed a direct appeal, but appellate counsel simultaneously filed a brief under *Anders v. California*, 386 U.S. 738 (1967), seeking permission to withdraw from representation on the basis that the appeal had no merit. *Commonwealth v. Scott*, 524 EDA 2017, 2019 WL 852135 at *1. The claims counsel identified were: (1) trial counsel was ineffective in failing to move for a judgment of acquittal; (2) insufficiency of the evidence; (3) the trial court erred by failing to vacate the jury's guilty verdict; (4) the prosecutor interfered with Scott's right to call Keisha Davis as a defense witness; (5) the trial court abused its discretion by denying a motion for a mistrial after the prosecutor asked FJ if he was afraid to testify; and (6) the trial court abused its discretion by overruling hearsay objections to FJ's prior statements. *Id*.

Although Scott replied to counsel's *Anders* brief, the Pennsylvania Superior Court agreed with counsel that the issues raised lacked merit, except that it ruled that claims of ineffective assistance of counsel were premature and should await collateral review. *Id*. at *3. It therefore affirmed the judgment of sentence against Scott in a written decision dated February 21, 2019. *Id*.

Scott then filed a timely petition for collateral relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S.A. §9541 *et seq*. 2022 WL 17592200 at *3. In it, he argued that trial counsel was ineffective in the following respects:

3

(1) failing to interview and to assure the attendance at trial of potential witness Keecha Davis (clearly, a corrected spelling of Keisha Davis);

(2) failing to object to the prosecution's reference in opening and closing arguments to "threats, intimidation and/or fear" allegedly suffered by FJ, leading to his recantation;

(3) opening the door and/or failing to properly object to the prosecution eliciting testimony about witnesses "going South";

(4) opening the door to and/or failing to object to the prosecutor's questions about the alibi witnesses' failure to speak to police;

(5) stipulating to "materially incorrect facts, fail[ing] to object to related prejudicial testimony and argu[ing] in closing about related facts not of record, all in relation to bullet fragments found at the scene of the crime, when none such were in evidence; and

(6) failing to object to the prosecution's use of FJ's unsworn statements to his father and to Detective Parker, and for failing to object to the trial court's related jury charge.

*Id*. at **3-4. Scott also raised a seventh claim of cumulative error amounting to ineffective assistance of counsel. *Id*.

The PCRA court denied relief on April 3, 2022. *Id*. at *16. On December 13, 2022, the Pennsylvania Superior Court issued a written decision affirming the PCRA court's decision *Id*. at *1.

On January 18, 2023, Scott filed this timely *pro se* petition for habeas corpus relief. He attached to his petition writings describing all claims he raised on direct appeal and in his PCRA petition. In his actual petition, however, he sets forth only four claims. *Petition* at ¶11. He argues that trial counsel was ineffective (1) in failing to ensure the attendance of Keecha Davis to testify at trial; (2) for failing to object to the prosecution's references to "threats, intimidation and/or fear" in its opening and closing arguments; (3) in opening the door and/or failing to object to testimony about witnesses "going South"; and (4) for failing to object to the prosecutor's questions and comments related to the alibi witnesses not having spoken to the police. *Id*.

4

II.      *Relevant Legal Standards*

      A.      *Standard for Issuance of a Writ of Habeas Corpus*

In enacting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress significantly limited the federal courts' power to grant a writ of habeas corpus. Where the claims presented in a federal habeas petition were adjudicated on the merits in the state courts, a federal court may not grant habeas relief unless the adjudication either (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §2254(d).

As the United States Supreme Court has explained, a writ may issue under the "contrary to" clause of Section 2254(d)(1) only if the "state court applies a rule different from the governing rule set forth in [United States Supreme Court] cases or if [the state court] decides a case differently than [the United States Supreme Court] has done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A writ may issue under the "unreasonable application" clause only where there has been a correct identification of a legal principle from the Supreme Court but the state court "unreasonably applies it to the facts of the particular case." *Id*. This requires a petition to demonstrate that the state court's analysis was "objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). State court factual determinations are given considerable deference under AEDPA. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004).

B.      *Ineffective Assistance of Counsel*

In order to succeed on a claim of ineffective assistance of counsel, a habeas petitioner

must show (a) that counsel's performance was deficient and (b) that counsel's actions prejudiced

the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1983). To prove prejudice, the

defendant must show that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id*. A reasonable probability is a

probability "sufficient to undermine confidence in the outcome." *Id* at 694. In other words, the

petitioner must show that the "result of the proceeding was fundamentally unfair or unreliable."

*Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

Counsel's conduct is presumed to fall "within the wide range of professional assistance"

and it is the petitioner's burden to "overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy." *Strickland*, at 466 U.S. 689-90.

III.    *Discussion*

A.      *Counsel's Failure to Obtain Keecha Davis as a Defense Witness*

Keecha Davis, the bartender, testified at Scott's first trial consistently with a statement

she had given to police on April 20, 2011. 2022 WL 17592200 at *10. She told police that, on

April 4, 2011, Scott stole her phone from the bar counter while she was working. *Id*. When

Scott returned to the bar, he told her he had sold her phone to FJ. *Id*. She and Scott went outside

to confront FJ, and, when they did, Scott and FJ "got into words and they were going back and

forth." *Id*. Davis "flagged down police" who "stopped" Scott and FJ. *Id*. Davis was not aware

of any physical altercation between Scott and FJ, and she did not witness the shooting on April 8,

2011. *Id*.

Davis did not testify at Scott's second trial. Scott attached to his PCRA petition an affidavit signed by Davis on July 17, 2020. *Id*. at *11. In it, Davis stated that, when she and FJ were waiting together in a witness room on June 29, 2016, FJ told her "that he feels bad because [Scott] is innocent, and no one believes him," and that his father was making him appear at trial. *Id*. She further stated that, when she returned to court on June 30, 2016, the prosecutor told her that the trial was over and that she could leave. *Id*. Davis also stated that, if notified, she would have come to court to testify in the second trial. *Id*.

Sometime later during the pendency of his PCRA appeal, Scott filed a supplemental affidavit from Keecha Davis. In this second affidavit, Davis asserted that she did not appear in court for the second day of trial because "she received a telephone call from a female" that day "who told her that she was not needed." *Id*. In that affidavit, Davis also stated that FJ had told her outside of the courtroom on the first day of trial that he was going to "make things right," which she interpreted to mean that Scott was not the shooter. *Id*. She also asserted that she told the police on April 20, 2011, that she did not think Scott shot FJ because Scott is not a "tough guy." *Id*.

Thus, in both affidavits, Davis asserted that (1) she would have testified at Scott's second trial if she had not been misinformed that she was not needed; and that (2) FJ told her, or implied, that Scott was not the person who shot him.

In his PCRA petition, Scott argued that trial counsel was ineffective in failing to ensure the attendance of Keecha Davis. The PCRA court rejected this claim, and the Pennsylvania Superior Court adopted the trial court's "thorough and well-reasoned" opinion, attaching a copy of that opinion to its own decision. *Id*. at *5, **10-13.

In the decision which was adopted by the Pennsylvania Superior Court, the PCRA court wrote that Scott could not show ineffective assistance of counsel with regard to the absence of Davis's testimony because her affidavits did not "establish a reasonable possibility that, but for her failure to testify the outcome of the trial would have been different." *Id*. at *10.

Scott argued before the PCRA court that Davis's testimony was needed to oppose the Commonwealth's version of events whereby a fight between him and FJ over Davis's phone was the motive for the shooting, and also that her testimony could have been used to impeach FJ "regarding his motive to lie and outside influences on his testimony." *Id*.[3]

Nevertheless, the PCRA court pointed out that (a) Davis did not witness FJ being shot; (b) her version of events did not rule out the Commonwealth's theory that Scott shot FJ because of bad feelings arising from the dispute over her phone; (c) FJ testified at both his first and second trials that Scott did not shoot him, so that Davis's testimony that he told her the same thing would not have told the jury something it did not know; and finally (d) motive was not relevant to Scott's alibi defense that he was asleep at his mother's house at the time of the shooting. *Id*. at **10-11. The Pennsylvania Superior Court adopted this reasoning. *Id*. at *5.

---

[3] Scott has not developed his arguments in his habeas petition as thoroughly as he did before the Pennsylvania courts. Throughout its response, the Commonwealth has assumed that Scott intended to raise arguments he raised in the Pennsylvania courts regarding the same claims, and the undersigned believes this is a reasonable assumption.

As above, this Court is entitled to disturb the Pennsylvania court's decision only if its adjudication was contrary to clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence.  28 U.S.C. §2254(d).

It has long been recognized that the Pennsylvania standard for ineffective assistance of counsel is essentially the same as the federal standard set forth in *Strickland*.  *Boyd v. Waymart*, 579 F.3d 330, at 334 n. 2 (3d Cir. 2009) (concurring opinion), *citing Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987).

Further, in deciding that Scott was not prejudiced by the absence of Keecha Davis's testimony, the Pennsylvania courts applied a standard identical to that set forth in *Strickland*, whereby prejudice can be found only where a reasonable probability is shown that, but for counsel's error, the result of the proceeding would have been different.  466 U.S. at 687.  It is impossible to say, therefore, that the standard applied was contrary to federal law.

Further, the Pennsylvania courts' determination of the facts was far from unreasonable. Nothing in Davis's affidavits contradicts her statement to the police that there was, indeed, an incident involving Scott and FJ related to the theft of her phone, even if she did not see a physical fight.  It was up to the jury to decide whether that was a plausible motive for Scott to shoot FJ.  Further, FJ himself testified that Scott did not shoot him; therefore, Davis's testimony that FJ had said that Scott was innocent – while presumably useful as additional supporting evidence – would have been essentially cumulative to FJ's own testimony.  There is no basis under 28 U.S.C. §2254(d), therefore, for this court to interfere with the Pennsylvania Superior Court's rejection of this claim.

B.      *Counsel's Failure to Object to Prosecution's References to "Threats, Intimidation, and/or Fear"*

Scott argues that his trial counsel was ineffective in failing to object to remarks by the prosecutor in her opening and closing arguments to the effect that FJ was scared to testify, on the basis that these remarks suggested to the jury that FJ received threats from Scott or people associated with him. This argument was raised before the Pennsylvania Superior Court in Scott's PCRA appeal and rejected by that court.

The Pennsylvania Superior Court, again adopting the opinion of the PCRA court, held that this claim was inappropriately raised in the PCRA petition because it had been rejected in Scott's direct appeal. 2022 WL 17592200, *supra*, at *12. As the Commonwealth points out, this is inaccurate: even the Superior Court described the issue raised on direct appeal as pertaining to counsel's failure to object to questions to FJ himself about whether he was afraid to testify. *Id*. This is clearly distinct from a claim that counsel was ineffective in failing to object to prosecutorial misconduct in opening and closing arguments.

Nevertheless, the PCRA court opinion – which the Pennsylvania Superior Court adopted – went on to discuss the claim on its merits. It determined that counsel was not ineffective for failure to object to the prosecutor's remarks, because they were permissible. *Id*. at **12-13. First, they were based on the evidence, in that FS testified that his son entered the witness protection program, and was living outside of Pennsylvania, and also testified that FJ told him the night before he testified that he was "scared" to do so. *Id*. at *13. The prosecutor's remarks were therefore appropriate under Pennsylvania law. *Id*., *citing Commonwealth v. Jones*, 668 A.2d 491, 514 (Pa. 1995) ("prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom").

Secondly, the PCRA court pointed out that it instructed the jurors that closing arguments did not constitute evidence, and that they were not bound by "counsel's perspective of what the evidence in this case shows." *Id*. Thus, any potential prejudice was cured. *Id*.

There is no basis upon which this Court can disturb the Pennsylvania Superior Court's decision in this regard. The state law applied by the Pennsylvania courts was consistent with the federal standard for prosecutorial misconduct set forth in *Darden v. Wainwright*, 477 U.S. 168 (1986). There, the United States Supreme Court wrote that improper comments by prosecutors result in prosecutorial misconduct only when they so infect the trial with unfairness that they make the resulting conviction a denial of due process. *Id*. at 181. In *Darden*, no denial of due process was found where, among other factors considered, the prosecutor's closing argument did not "manipulate or misstate the evidence" and where – as here – the trial court instructed the jury that the arguments of counsel were not evidence. *Id*. at 182. Barring constitutional error, a state court's interpretation of its own law is binding on a federal habeas court. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Thus, accepting the Pennsylvania court's finding that the prosecutor's remarks were permissible under Commonwealth law, it is clear that trial counsel was not ineffective under *Strickland* for failing to object to them. Counsel cannot be considered ineffective for failing to make meritless objections. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

C.    *Trial Counsel was Ineffective in "Opening the Door" and/or Failing to Object to Testimony about Witnesses "Going South"*

Detective Parker appeared at Scott's second trial and testified about meeting with FJ in the hospital and taking his statement, which incriminated Scott, and about how FJ later changed his story and denied that Scott shot him. *Trial Transcript*, June 30, 2016, at 15:17-46:19. The prosecutor then asked: "Did that surprise you in any kind of way that he had – he said that it was

11

not the person who shot him?" *Id*. at 47:2-4. Detective Parker responded "No … Typically it

happens a lot." *Id*. at 47:5-8. At this point, Scott's counsel objected. *Id*. at 47:9-11. The judge

sustained the objection, but permitted the prosecutor to lay a foundation, saying "I don't

normally allow officers to testify to what happens in a lot of different cases … But you can lay a

foundation." *Id*. at 47:15-20.

The prosecutor then provided a foundation for this line of inquiry by questioning

Detective Parker about his experience on the police force. When he asked Detective Parker

"[A]re you familiar with what is called – a term called a south witness?", defense counsel asked

to see the judge at sidebar, and the question was not repeated. *Id*. at 48:11-21. Later, however,

when the prosecutor asked Detective Parker why he was not surprised at FJ "saying that wasn't

the person who shot him," he responded: "During my investigations, that was not the first time

that something like that happened." *Id*. at 53:3-9. Defense counsel moved to strike that

testimony, but his objection was overruled. *Id*. at 53:11-13. Detective Parker then testified that

in ten or twelve of the 25 shooting cases he investigated, "the witness later said that was not the

person." *Id*. at 54:3-19.

Similarly, the prosecutor elicited testimony from Assistant District Attorney Brent Furber

that, out of fifteen jury trials he had tried for nonfatal shootings, approximately 75% of the time

he "had an identification witness fail to make an identification in court." *Id*. at 2147:23-149:5.

Defense counsel objected three times as to relevance during this testimony, but the trial court

would not sustain his objections. *Id*. at 147:25-148:4; 148:24-149:14-150:2.

Scott now argues that his counsel was ineffective for "opening the door and/or failing to

properly object to the Commonwealth eliciting impermissible testimony about witnesses going

south in this case and other cases." *Petition* at Attachment C(i) at III.

12

In Scott's PCRA appeal, this issue was rejected by the Pennsylvania Superior Court, which once again adopted the PCRA court's reasoning. 2022 WL 17592200 at *5. The PCRA court wrote: "Here, Detective Parker's and ADA Furber's testimony regarding their experience with witnesses going south was appropriate and relevant due to the evidence of [FJ]'s fear at trial [.]" *Id*. at *14. The court further pointed out that the admissibility of evidence is a matter for the discretion of a trial judge. *Id*.

Here, again, it is crucial that a state court's interpretation of its own law is binding on a federal habeas court. *Bradshaw v. Richey*, *supra*. The Pennsylvania Superior Court has determined that the evidence was properly admitted under Pennsylvania law. Therefore, it is not possible to find that defense counsel was ineffective under *Strickland* for failing to prevent it from being admitted.

It is also notable that Scott's trial counsel objected consistently to the testimony from both Detective Parker and ADA Furber as to their general experience with witnesses "going south." Scott argues that his counsel did not "properly object" to the testimony, and may mean by this that counsel should have objected on different grounds. Nevertheless, given counsel's strenuous efforts to exclude this "statistical" evidence, it would be difficult to find that his performance was so deficient as to fall afoul of *Strickland*.

It is not clear what Scott means by alleging that his counsel "opened the door" to this testimony. It is difficult to see how this could be a valid criticism of defense counsel, since the evidence from both witnesses came in on direct examination, and not in response to any testimony elicited by the defense. Possibly, Scott refers to the fact that defense counsel emphasized in his opening argument the fact that FJ had testified several times that Scott was not

the man who shot him. *Trial Transcript*, July 29, 2016 at 29:9-31:2. This, however, was hardly

avoidable; counsel would certainly have been ineffective if he had ignored FJ's recantation.

> D.     *Trial Counsel Failing to Object to Questions about Alibi Witnesses Not Having Spoken to the Police*

Finally, Scott argues that his trial counsel was ineffective for opening the door, and

failing to properly object to, questions put to the alibi witnesses on cross-examination about their

not providing statements or speaking to police after Scott was arrested. In his PCRA appeal,

Scott specified that counsel "opened the door" to these questions by asking Scott's mother,

Stephanie Sharper: "[n]ow, you did not talk to an investigator from the police, is that correct?"

2022 WL 17592200, *supra*, at *14. The prosecutor then cross-examined both Sharper and Jamal

Hairston on this point. 2022 WL 17592200, *supra* at **14-15; *Trial Transcript*, June 30, 2017 at

231:4-6 (To Sharper: "You don't tell anyone in two years that your son is sitting in jail for a

crime he could not have committed and you are his alibi, right?"); 290:25-291:4 (To Hairston:

"You never called the police and said my friend of 15 years has been arrested and is in jail on a

crime he couldn't possibly have committed, correct?").

The Pennsylvania Superior Court again relied on the reasoning of the PCRA court in

rejecting this claim. *Id*. at *5. The PCRA court decided that counsel was not ineffective in this

respect, since Pennsylvania case law established that "the reason(s) alibi witnesses did not

provide police statements is proper cross-examination." *Id*. at *14, *citing Commonwealth v.

Rayner*, 153 A.3d 1049 (Pa. Super. 2016).

The state court's interpretation of *Commonwealth v. Rayner* is binding on this Court.

*Bradshaw v. Richey*, *supra*. Because the cross-examination questions were proper under

Pennsylvania evidentiary law, trial counsel could not be ineffective under *Strickland* for opening

14

the door to them, or for failure to "properly" object to them.[4]  There is, therefore, no basis upon which to disturb the Pennsylvania Superior Court's resolution of this claim.

    *IV.*    *Conclusion*

    For the reasons set forth above, I now make the following:

### *RECOMMENDATION*

    AND NOW, this 8th day of September, 2025, it is respectfully recommended that this Petition be denied.  There has been <u>no</u> substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.  The petitioner may file objections to this Report and Recommendation within fourteen days after being served with a copy.  *See* Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights. *See Leyva v. Williams*, 504 F.3d 357, 364 (3d Cir. 2007).

                             BY THE COURT:

                             */s/ Scott W. Reid*

                             _____
                             SCOTT W. REID
                             UNITED STATES MAGISTRATE JUDGE

---

[4] In fact, defense counsel objected twice to the prosecutor's questioning of Stephanie Sharper about her failure to speak to police, but his objections were overruled.  *Trial Transcript*, June 30, 2017, at 230:16, 22-23; 233:14-16.